IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

---

AMERICAN IMMIGRATION LAWYERS
ASSOCIATION,

               Plaintiff,

                                 Civil Action No. 1:16-cv-02470-TSC

     v.

UNITED STATES DEPARTMENT OF
HOMELAND SECURITY and
UNITED STATES CUSTOMS AND
BORDER PROTECTION,

               Defendants.

---

**PLAINTIFF AMERICAN IMMIGRATION LAWYERS ASSOCIATION'S COMBINED
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LIMITED DISCOVERY**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................................. iii

INTRODUCTION .............................................................................................................. 1

FACTUAL BACKGROUND .............................................................................................. 1

I.      The Parties ........................................................................................................... 1

II.     Procedural History ............................................................................................... 2

        A.      AILA's 2013 FOIA Request ..................................................................... 2

        B.      This Action ............................................................................................... 4

                1.      The Complaint .............................................................................. 4

                2.      CBP's production of records ......................................................... 4

                3.      CBP's justification for failing to produce the records listed in
                        ORT Chapters 11 and 12 ............................................................... 5

LEGAL STANDARD .......................................................................................................... 6

ARGUMENT ....................................................................................................................... 8

I.      THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT SHOULD
        BE DENIED .......................................................................................................... 8

        A.      There Is A Genuine Disputed Issue Of Material Fact Regarding Whether
                ORT Chapter 11 "Contains" The Policies Listed (And Linked) In That
                Chapter. .................................................................................................... 8

        B.      There Is A Genuine Disputed Issue Of Material Fact Regarding Whether
                Portions Of The ORT Other Than Chapters 11 And 12 Exist. ............. 11

        C.      There Is A Genuine Disputed Issue Of Material Fact Regarding Whether
                The Government Conducted An Adequate Search For Responsive
                Records. .................................................................................................. 12

                1.      The Government did not perform electronic searches for
                        responsive records or produce any emails, memoranda, notes,
                        orders or reports related to the discontinuation of the IFM or the
                        implementation or use of the ORT ............................................. 13

                2.      The Government failed to ask a number of CBP offices whether
                        they had responsive agency records ........................................... 14

D.      There Is A Genuine Disputed Issue Of Material Fact Regarding Whether Records Related To The Implementation Of The ORT Exist ............................... 16

E.      There Is A Genuine Disputed Issue Of Material Fact Regarding Whether CBP Properly Asserted FOIA Exemption (7)(E) In Redacting The Titles Of Certain Agency Records In ORT Chapter 11 ................................................... 17

    1.      Factual Background ................................................................. 17

    2.      Legal Standard ......................................................................... 19

    3.      The Government is not entitled to summary judgment as to CBP's assertion of Exemption 7(E) to redact titles of Chapter 11 records. ......... 19

II.     AILA'S MOTION FOR LIMITED DISCOVERY SHOULD BE GRANTED. .............. 21

A.      Legal Standard ...................................................................... 21

B.      AILA Should Be Permitted To Depose The Government's Two Declarants With Respect To The Numerous Fact Issues That Their Declarations Raise .................................................................................................. 22

CONCLUSION ................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*Allard K. Lowenstein Int'l Human Rights Project v. U.S. Dep't of Homeland Sec.*,
626 F.3d 678 (2d Cir. 2010)..............................................................................19, 20

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...................................................................................................6

*Baker & Hostetler LLP v. U.S. Dep't of Commerce*,
473 F.3d 312 (D.C. Cir. 2006)................................................................................22

*Beltranena v. U.S. Dep't of State*,
821 F. Supp. 2d 167 (D.D.C. 2011).......................................................................21

*Carney v. U.S. Dep't of Justice*,
19 F.3d 807 (2d Cir. 1994).....................................................................................22

*Church of Scientology v. IRS*,
792 F.2d 146 (D.C. Cir. 1986), *aff'd*, 484 U.S. 9 (1987).........................................14

*Davis v. U.S. Dep't of Justice*,
460 F.3d 92 (D.C. Cir. 2006) ...................................................................................7

*El Badrawi v. U.S. Dep't of Homeland Sec.*,
583 F. Supp. 2d 285 (D. Conn. 2008)....................................................................14

*Exxon Corp. v. FTC*,
466 F. Supp. 1088 (D.D.C. 1978) .....................................................................22, 23

*Families for Freedom v. CBP*,
No. 10-2705, 2011 WL 6780905 (S.D.N.Y. Dec. 27, 2011) ...................................23

*Gallant v. NLRB*,
26 F.3d 168 (D.C. Cir. 1994) ...................................................................................7

*George v. Leavitt*,
407 F.3d 405 (D.C. Cir. 2005) ..................................................................................6

*Goland v. CIA*,
607 F.2d 339 (D.C. Cir. 1978) ...............................................................................22

*Iturralde v. Comptroller of Currency*,
315 F.3d 311 (D.C. Cir. 2003) ..................................................................................7

*Justice v. IRS*,
798 F. Supp. 2d 43 (D.D.C. 2011),
*aff'd*, 485 Fed. Appx. 439 (D.C. Cir. 2012)............................................................22

*Leopold v. U.S. Dep't of Justice*,
    130 F. Supp. 3d 32 (D.D.C. 2015) ........................................................................8

*Mayer Brown LLP v. IRS*,
    562 F.3d 1190 (D.C. Cir. 2009) ..........................................................................19

*Morley v. CIA*,
    508 F.3d 1108 (D.C. Cir. 2007) .......................................................................7, 13

*Nation Magazine v. U.S. Customs Serv.*,
    71 F.3d 885 (D.C. Cir. 1995) ..............................................................................14

*NLRB v. Robbins Tire & Rubber Co.*,
    437 U.S. 214 (1978) ..............................................................................................6

*Oglesby v. U.S. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) .......................................................................6, 7, 14

*Patterson v. IRS*,
    56 F.3d 832 (7th Cir. 1995) ...................................................................................8

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ............................................................................7

*Steinberg v. U.S. Dep't of Justice*,
    23 F.3d 548 (D.C. Cir. 1994) ......................................................................6, 13, 14

*Truitt v. U.S. Dep't of State*,
    897 F.2d 540 (D.C. Cir. 1990) ..............................................................................9

*Valencia-Lucena v. U.S. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999) ............................................................................17

*Washington Post Co. v. U.S. Dep't of State*,
    840 F.2d 26 (D.C. Cir. 1988)
    *vacated on other grounds*, 898 F.2d 793 (1990) .................................................22

*Weisberg v. U.S. Dep't of Justice*,
    705 F.2d 1344 (D.C. Cir. 1983) .......................................................................8, 13

**Statutes**

5 U.S.C. § 552(a)(3)(A) ...............................................................................................6

5 U.S.C. § 552(b)(7)(E) .............................................................................................19

5 U.S.C. § 552(b)-(c) ...................................................................................................6

**Other Authorities**

Fed. R. Civ. P. 56(a) ....................................................................................................................6

Fed. R. Civ. P. 56(d) ..........................................................................................................1, 21, 24

## INTRODUCTION

The American Immigration Lawyers Association ("AILA") filed this FOIA action to compel the U.S. Customs and Border Protection ("CBP") to disclose records relating to CBP's Officer's Reference Tool ("ORT"), a reference for CBP personnel to use during the inspection and admission of individuals into the United States.

The Government's position in this case is unreasonable.  Acknowledging that the ORT is a "*centralized online repository* for CBP's admissibility policies," which "serves as a comprehensive 'how to' manual detailing official CBP policies and procedures for CBP's admissibility mission," the Government nonetheless maintains that it is not required to produce *any* of the over 350 policies, memos and guides listed in Chapter 11 of the ORT because "[t]he Chapter does not, *itself*, contain the underlying policies, but rather, provides a *link* to access the documents."[1]

For the reasons stated below, the Government's motion for summary judgment should be denied, and AILA's motion to depose the Government's two declarants should be granted under Fed. R. Civ. P. 56(d).

## FACTUAL BACKGROUND

### I.    THE PARTIES

Plaintiff AILA is the national association of immigration lawyers established to promote justice, advocate for fair and reasonable immigration law and policy, advance the quality of immigration and nationality law and practice, and enhance the professional development of its members.

---

[1]  6/7/17 Declaration of James Ryan Hutton ("Hutton Decl.") ¶¶ 5-7 (ECF No. 16-2 at 3).  All emphasis in this brief is added, unless otherwise noted.

Defendant CBP, a component of Defendant U.S. Department of Homeland Security ("DHS"), is the largest law enforcement agency in the United States, with the U.S. Border Patrol, a division of CBP, employing more than 20,000 agents in 2015. CBP is the primary agency tasked with enforcement of rules regarding inspection and admission at the border and at ports of entry. As such, CBP's policies and practices regarding inspection and admission are of vital importance to members of the immigration bar and to the general public.

## II.     PROCEDURAL HISTORY

### A.     AILA's 2013 FOIA Request

In 2007, in response to FOIA requests, CBP released a redacted copy of its Inspector's Field Manual ("IFM"). At the time, the IFM was the primary reference tool that CBP officers used during the inspection and admission process. Beginning at some currently undisclosed date, CBP began to phase out the IFM and, as early as 2009, began to implement the ORT. *See Securing America's Borders: CBP Fiscal Year 2009 in Review Fact Sheet*, CBP (Nov. 24, 2009)[2] (noting that CBP "[m]ade significant progress on . . . implementing the Officer Reference Tool"). In 2013, CBP publicly indicated its intention to replace the IFM with the ORT. Despite having previously provided a redacted copy of the IFM to the public,[3] CBP to this day has chosen not to provide any portion of the ORT to the public, even in redacted form.

On July 10, 2013, AILA submitted a FOIA Request to CBP, requesting records related to CBP's discontinuation of the use of the IFM as a reference tool, the implementation of the ORT

---

[2] *See* https://www.cbp.gov/newsroom/local-media-release/securing-americas-borders-cbp-fiscal-year-2009-review-fact-sheet (last accessed Jul. 12, 2017).

[3] *See* https://foiarr.cbp.gov/index.asp?ps=1&search=&category=Manuals_and_Instructions (last accessed Jul. 12, 2017).

as a reference tool, and an actual copy of finalized and implemented portions of the ORT.

Specifically, AILA's FOIA Request sought records relating or referring to the following:

- Instructions to the field/ports-of-entry regarding the discontinuation of the CBP Inspector's Field Manual (IFM) as a reference tool for CBP field personnel during the inspection and admission of individuals at United States air, land and sea ports-of-entry, including pre-clearance offices located outside the United States.

- Instructions to the field/ports-of-entry regarding the implementation of the new CBP Officer's Reference Tool (ORT) for use during the inspection and admission of individuals at United States air, land and sea ports-of-entry, including preclearance offices outside the United States.

- A complete copy of the portions of the ORT that have been finalized and implemented for use in the field/ports-of-entry. We ask that this FOIA request be treated as a "rolling" request and that copies of future sections of the ORT be released as they are finalized and implemented.

(*See* Compl. ¶ 6 & Ex. A (ECF No. 1).)  AILA also requested a waiver of all fees related to its

FOIA Request.  (*Id*.)

On July 10, 2013, CBP sent AILA an email, which acknowledged receipt of the FOIA

Request and assigned a reference number to it.  (*Id*. ¶ 7 & Ex. B.)

On June 10, 2015, having received no substantive response to its FOIA Request, AILA

filed an administrative appeal with CBP, challenging CBP's constructive denial of the FOIA

Request.  (*Id*. ¶ 9 & Ex. C.)

CBP failed to respond to AILA's administrative appeal, other than to send a July 1, 2015

email with respect to AILA's fee waiver request.  (*Id*. ¶ 10 & Ex. D**.)**

### B.     This Action

#### 1.     The Complaint

On December 19, 2016, AILA filed this action seeking:  (i) a finding that CBP has violated FOIA by failing to comply with the statutory time period for responding to AILA's FOIA Request; (ii) an order to compel CBP to conduct a reasonable search for records responsive to the FOIA Request, and to produce responsive records to AILA; and (iii) an order requiring CBP to grant AILA's public interest fee request waiver under FOIA.  (Compl. ¶¶ 42-56 (ECF No. 2).)

#### 2.     CBP's production of records

On March 1, 2017—almost *four years* after AILA made its FOIA Request—CBP produced *two* documents to AILA:  (1) a 25 page online index of Chapter 11 of the ORT (with 66 document titles redacted); and (2) a one page online index of Chapter 12 of the ORT.  (*See* 7/12/17 Declaration of Betsy Lawrence ("Lawrence Decl.") ¶ 2 & Exs. A-C.)

The ORT Chapter 11 index contains over 350 memos, musters,[4] guides and Standard Operating Procedures ("SOPs") related to admissibility policy, which are listed alphabetically by title.  (*See id.* at Ex. B.)  Chapter 11 contains electronic links to each of those documents, which may be accessed by CBP personnel by clicking on the links.  (Hutton Decl. ¶ 7 (ECF No. 16-2 at 3).)

The  ORT Chapter 12 index is entitled "Laws, Regulation and Systems," and contains links directed to those topics.  (Lawrence Decl. ¶ 2 & Ex. C.)

---

[4]  A "muster" is a CBP briefing document that is communicated to CBP personnel at the beginning of their work shift or on a regular basis.

On April 19, 2017, CBP produced two additional documents—a one page memo, and a one page muster—relating to CBP's discontinuation of the use of the IFM as a reference tool. (*Id*. at ¶ 3 & Ex. D.)

On June 15, 2017, CBP produced a second version of the ORT Chapter 11 index, with revised redactions.  (*Id*. at ¶ 4 & Exs. E-F.)

### 3. CBP's justification for failing to produce the records listed in ORT Chapters 11 and 12

CBP acknowledges that "[t]he ORT is a *centralized online repository* for CBP's admissibility policies and serves as a comprehensive 'how to' manual detailing official CBP policies and procedures for CBP's admissibility mission," but maintains that CBP is not required to produce the hundreds of records listed in Chapters 11 and 12 of the ORT under FOIA because those Chapters *do not, themselves, "contain the underlying policies, but rather, provides a link to access the documents*."  (Hutton Decl. ¶¶ 5, 7-8 (ECF No. 16-2 at 3).)

After CBP produced the Chapter 11 and 12 indexes to AILA on March 1, 2017, AILA's counsel wrote CBP's counsel on March 13, 2017, requesting supplementation of CBP's FOIA response.  Specifically, AILA's counsel noted:

> The FOIA request asked for the ORT to be produced, and the ORT includes the memoranda and other documents identified in the table of contents [to Chapters 11 and 12].  Therefore, a responsive request should include those documents.

(7/13/17 Declaration of Naikang Tsao ("Tsao Decl.") ¶ 2 & Ex. A.)

In response, on March 17, 2017, CBP's counsel wrote:

> CBP believes that *what constitutes the ORT is subject to CBP's definition*.  We believe the ORT is only cross-referencing other documents.  Therefore, we do not believe that a responsive request requires the production of cross-referenced documents.

(*Id*. at ¶ 3 & Ex. B.)

5

**LEGAL STANDARD**

Summary judgment is warranted when no genuine dispute of material fact exists and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A material fact dispute is "'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *George v. Leavitt*, 407 F.3d 405, 410 (D.C. Cir. 2005) (quoting *Anderson*, 477 U.S. at 248).  Thus, in considering a motion for summary judgment, the court must view the evidence "in the light most favorable to the nonmoving party." *Id*.

"The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).  Toward that end, FOIA provides that agencies "shall make . . . records promptly available to any person" who submits a request that "(i) reasonably describes such records and (ii) is made in accordance with [the agency's] published rules."  5 U.S.C. § 552(a)(3)(A).  The Act is "broadly conceived," and its "basic policy" is in favor of disclosure.  *Robbins Tire,* 437 U.S. at 220.  Agencies are, however, permitted to withhold records under nine statutory exemptions and three special exclusions for law-enforcement records.  *See* 5 U.S.C. § 552(b)-(c).

To prevail on summary judgment on a claim challenging the adequacy of its records search, the agency must show that there is no genuine issue of material fact about the adequacy of its records search.  *See Steinberg v. U.S. Dep't of Justice,* 23 F.3d 548, 551 (D.C. Cir. 1994).  To demonstrate that its search was adequate, "the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of Army,* 920 F.2d 57, 68 (D.C. Cir. 1990).  In other words, the search must have been a good faith effort and reasonable in

light of the request. Good faith is presumed, *see SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991), and it can be bolstered by evidence of the agency's efforts to satisfy the request.  Reasonableness is a flexible and context-dependent standard.  *See Davis v. U.S. Dep't of Justice,* 460 F.3d 92, 103 (D.C. Cir. 2006) ("[T]he adequacy of an agency's search is measured by a standard of reasonableness, and is dependent upon the circumstances of the case.") (internal quotation marks omitted).

Evidence that a search was reasonable and conducted in good faith generally comes in the form of reasonably detailed, nonconclusory affidavits submitted in good faith.  *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007).  The affidavit requirement is important because

> [a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment.

*Oglesby,* 920 F.2d at 68.

In response to an agency affidavit, the FOIA requester can present "'countervailing evidence' as to the adequacy of the agency's search." *Iturralde v. Comptroller of Currency,* 315 F.3d 311, 314 (D.C. Cir. 2003).  Once both parties have made their case, "if a review of the record raises substantial doubt [about the adequacy of the search], particularly in view of well defined requests and positive indications of overlooked materials, summary judgment [in favor of the agency] is inappropriate." *Id.* (internal quotation marks omitted); *see also Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994).  If the court finds the agency's search inadequate, "the requester must show 'some reason to think that the document would have turned up if the agency had looked for it,'" though since neither the requester nor the court know the content of the

agency's records, this is a low bar. *Patterson v. IRS,* 56 F.3d 832, 841 (7th Cir. 1995) (quoting

*Weisberg v. U.S. Dep't of Justice,* 705 F.2d 1344, 1351 (D.C. Cir. 1983)).

## ARGUMENT

## I.   THE GOVERNMENT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED.

### A.   There Is A Genuine Disputed Issue Of Material Fact Regarding Whether ORT Chapter 11 "Contains" The Policies Listed (And Linked) In That Chapter.

The Government argues that it is not required to produce, even in redacted form, any of

the over 350 CBP agency records listed in the ORT Chapter 11 index because "[t]he Chapter

*does not, itself, contain* the underlying policies, but rather, provides a *link* to access the

documents."  (Hutton Decl. ¶ 7 (ECF No. 16-1 at 2).)

The Government's position is unreasonable.  As a legal matter, CBP is required to

"liberally construe" FOIA requests to serve the public disclosure purposes of FOIA.  As this

Court recently explained:

> To evaluate the adequacy of a search under FOIA, a court must
> first examine the scope of the request itself.  *See Nation Magazine,*
> *Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 889 (D.C.
> Cir. 1995).  Though FOIA requires the requester to "reasonably
> describe[ ]" the records sought, 5 U.S.C. § 552(a)(3)(A), agencies
> must liberally construe FOIA requests, even where a request is
> poorly defined, *see LaCedra v. Exec. Office for U.S. Attorneys*, 317
> F.3d 345, 348 (D.C. Cir. 2003) (citations omitted) (stating that
> request was "not a model of clarity" but the defendant was
> obligated to "construe a FOIA request liberally," particularly when
> a "request is reasonably susceptible to the broader reading").  *See*
> *also Nation Magazine*, 71 F.3d at 890 (citations omitted)
> (quotation marks omitted) ("Although a requester must reasonably
> describe the records sought, an agency also has a duty to construe a
> FOIA request liberally.").

*Leopold v. U.S. Dep't of Justice*, 130 F. Supp. 3d 32, 43 (D.D.C. 2015).

Here, AILA sought "[a] complete copy of the *portions* of the ORT that have been finalized and implemented for *use* in the field/ports-of-entry."  Under a plain reading of that request, AILA sought the actual ORT policies and procedures that CBP frontline personnel are "us[ing]" in the field and at ports-of-entry to make admissibility determinations.[5]

Having admitted that the ORT is a "*centralized online repository* for CBP's admissibility policies" that "serves as a comprehensive 'how to' manual detailing official CBP policies and procedures," the Government violates FOIA by construing AILA's FOIA Request so narrowly that, in the Government's view, the ORT "online repository" is *empty* (*i.e.*, it does not "contain" the hundreds of policies that are listed in Chapter 11, even though CBP personnel may access those policies directly by clicking *links* in the Chapter 11 index).

The absurdity of the Government's position is highlighted by the fact that:  (a) the Inspector's Field Manual (IFM), which was the predecessor to the ORT, also was located on CBP's website (CBPnet); and (b) when CBP discontinued the use of the IFM, it instructed all field offices "to delete from their local webpages all *links* and references to the IFM." (Lawrence Decl. ¶ 3 & Ex. D at 2-3; Hutton Decl. ¶ 4 (ECF No. 16-2 at 3).)  Thus, CBP uses CBPnet to communicate information about its admissibility policies to frontline CBP officers nationwide and, liberally construed, AILA's request for the portions of the ORT that are finalized and in use encompasses the policies in Chapter 11.

---

[5]  Even if the Government interpreted the FOIA Request differently, once AILA clarified that its request included the policies, memos and musters listed in Chapter 11 (*see* Tsao Decl., Ex. A), the Government "came under a duty to conduct a reasonable search for the removed items, and to either disclose them . . . if they were nonexempt or, if deemed exempt, to treat them in its Vaughn index[.]"  *See Truitt v. U.S. Dep't of State*, 897 F.2d 540, 546 (D.C. Cir. 1990). When an agency "learn[s] of [a requester's] interest in" specific documents which fall within a liberal construction of the original request, the agency cannot "justify its inertia simply on the claim that [the requester] had not manifested [the interest] earlier."  *Id.* at 545-46.

As a factual matter, contrary to the Hutton declaration, CBP and other government agencies understand that the ORT "contains" the policies and procedures that are listed in that online repository.  CBP previously acknowledged to the DHS Office of the Inspector General that:

> In July 2012, CBP created a "Business Traveler's Corner" (BTC) webpage on CBPnetsecure under the "Officer's Reference Tool" site where the latest memoranda and regulations pertaining to L-1 visas and business travelers *are posted*.  The BTC webpage is maintained and updated regularly.  It is an effective source of information for CBPOs seeking information pertaining to admissibility about L-1 visas and business travelers."

(Tsao Decl., ¶ 4 & Ex. C (DHS, Office of Inspector General, IMPLEMENTATION OF L-1 VISA REGULATIONS  28-29 (Aug. 2013)).)  Thus, by CBP's own admission, memoranda and regulations are "posted" on the ORT, which is used by CBP personnel seeking information about admissibility issues.

Moreover, specific to Chapter 11, another governmental agency noted:

> [A]s of 2012, OFO no longer uses the Field Manual . . . .  The current OFO guidance on processing Expedited Removal cases, contained in an October 2014 memo/muster[33] is an improvement.
>
> [FN]33 According to OFO, memo/musters are sent to each field office, and, when circulated, are read and distributed to officers . . . at the beginning of each of that day's shifts. They also are available in OFO's electronic library. OFO is working on a replacement to the Field Manual, the Officer's Reference Tool, but it is not yet complete.  *Chapter 11 was made available on the OFO intranet in July 2015*; it *contains* the existing memo/musters on admissibility.

(Tsao Decl., Ex. D (U.S. Comm'n on Int'l Religious Freedom ("USCIRF"), BARRIERS TO PROTECTION:  THE TREATMENT OF ASYLUM SEEKERS IN EXPEDITED REMOVAL 28-29 & n.33 (2016)); *see also* Lawrence Decl., Ex. F at Bates No. USCBPRevised000016 (CBP-produced

ORT Chapter 11 contains same 10/2/14 memo/muster on "Processing Expedited Removal Cases" referenced in USCIRF report).)

As a matter of law, CBP should be ordered to produce all reasonably segregable portions of the records listed in ORT Chapter 11.  At a minimum, in light of the prior CBP and other agency statements about the ORT, there is a genuine disputed issue of material fact regarding whether the ORT "contains" the records posted on the ORT site, which requires the denial of the Government's motion.

> **B.     There Is A Genuine Disputed Issue Of Material Fact Regarding Whether Portions Of The ORT Other Than Chapters 11 And 12 Exist.**

The Government maintains that "[c]urrently there are only two parts of the ORT that exist – Chapter 11 and Chapter 12."  (Hutton Decl. ¶ 6 (ECF No. 16-2 at 3); *see also* Howard Decl. ¶ 5 (ECF No. 16-2 at 8).)

However, at the top of the ORT Chapter 12 index page, the CBP website contains links to "ORT" and Chapters "2, 3, 4, 5, 6, 7, 8, 10, 11, [and] 12" and "Tech Support" (in red):



(*See* Lawrence Decl., Ex. C.)  The number "12" is bolded because that is the specific Chapter link that has been clicked (and is shown).  The fact that the CBP website contains links to "ORT" and numerous other Chapters besides Chapters 11 and 12 suggests that there are other ORT records that were not searched or produced.

Similarly, at the top of ORT Chapter 11, the CBP website contains a link to "<<ORT Home">:



(*See* Lawrence Decl., Ex. B.)  The Government's declarants do not explain what happens when a person clicks on the "<<ORT Home" link, or what additional content may exist on the ORT website, which was not produced.

### C.   There Is A Genuine Disputed Issue Of Material Fact Regarding Whether The Government Conducted An Adequate Search For Responsive Records.

AILA submitted its FOIA Request on July 10, 2013.  CBP admits that it did not even "*process*[] AILA's FOIA request" until "[o]n or about March 1, 2017," and "provided AILA with documents" on March 1, 2017.  (Howard Decl. ¶ 7 (ECF No. 16-2 at 8).)  Setting aside the question of why the Government took no action on AILA's FOIA Request for almost *four years*, the entirety of the Government's cursory "search" for responsive documents consisted of contacting two CBP offices:  the Office of Field Operations (OFO) and the Office of Training and Development (OTD).

As explained by Mr. Howard:

> 4.     To process this request ["on or about March 1, 2017"], my office reached out to CBP's Office of Field Operations (OFO), who confirmed that CBP had endeavored to develop a new manual, the ORT.

> 5.     OFO also confirmed that only two parts of the ORT exist – Chapters 11 and 12.  OFO provided access to the two chapters that were responsive to the request.

> 6.     . . . I further contacted the Office of Training and Development (OTD) to see if there were any documents responsive to the request.   OTD confirmed that they had no

involvement with the development of the ORT and that it was
under the purview of OFO.

(Howard Decl. ¶¶ 4-6 (ECF No. 16-2 at 8).)

In addition to the reasons set out in Section I.B. above, the Government's search was
inadequate for the following reasons.

> **1.    The Government did not perform electronic searches for responsive
> records or produce any emails, memoranda, notes, orders or reports
> related to the discontinuation of the IFM or the implementation or use
> of the ORT.**

In the FOIA Request, AILA requested "any and all records" that relate or refer to the
discontinuation of the IFM, and the implementation of the ORT, and defined "records" to mean
"all . . . communications preserved in electronic or written form, including but not limited to
correspondence, directives, documents, . . . e-mails, . . . guidance, guidelines, . . . instructions,
analyses, memoranda, . . . notes, orders, … [or] reports[s]." (*See* Compl., Ex. A (ECF No. 1).)

The Hutton and Howard declarations do not state that CBP performed any electronic
searches for e-mails or other records, and CBP did not produce any emails, memoranda, notes,
orders, reports or electronic documents (other than the Chapter 11 and 12 indexes), which are all
within the scope of AILA's request.  The declarations are deficient because they do not describe
"*what records* were searched, *by whom,* and through *what process*."  *Steinberg*, 23 F.3d at 551-
52; *see Morley*, 508 F.3d at 1122 (finding declaration insufficient to carry the agency's burden
on summary judgment due to failure to provide information about search strategies, search terms
used, or how the search was conducted); *Weisberg*, 627 F.2d at 371 (agency declarations that "do
not denote which files were searched, or by whom, do not reflect any systematic approach to
document location, and do not provide information specific enough to enable [the requestor] to
challenge the procedures utilized" cannot support summary judgment).  The declaration must
also "describe at least generally the structure of the agency's file system" which renders any

further search unlikely to disclose additional relevant information. *Church of Scientology v. IRS*, 792 F.2d 146, 151 (D.C. Cir. 1986), *aff'd*, 484 U.S. 9 (1987). Such information is needed to allow a requester to challenge the search's adequacy and to allow the court to assess the search's adequacy for summary judgment purposes. *See Oglesby*, 920 F.2d at 68.

When an agency's declaration fails to describe the nature of its record keeping system, what files were searched or how the search was conducted, the D.C. Circuit and other courts have determined that the agency's search was inadequate. *See NationMagazine v. U.S. Customs Serv.*, 71 F.3d 885, 891 (D.C. Cir. 1995) (determining that Customs failed to "describe its recordkeeping system in sufficient detail" to allow the court to identify what subject matter files might have information responsive to the FOIA requests); *Steinberg*, 23 F.3d at 552 (remanding to assess adequacy of the U.S. Attorney's search because agency did not describe the search's mechanics and relied on a conclusory statement from one office that no responsive records existed); *El Badrawi v. U.S. Dep't of Homeland Sec.*, 583 F. Supp. 2d 285, 300 (D. Conn. 2008) (determining that CBP's declaration was insufficient because it did not describe the general scheme of CBP's file system and did not give detailed reasons for not searching other databases).

> **2.      The Government failed to ask a number of CBP offices whether they had responsive agency records.**

CBP's organizational chart (below)[6] shows that the Government's search for responsive records was unreasonably narrow and inadequate.

---

[6] *See* https://www.cbp.gov/sites/default/files/assets/documents/2016-Jun/CBP-Org-Chart-Realigned-clickable-061516.pdf;
https://www.cbp.gov/sites/default/files/assets/documents/2016-Jun/cbp-OS-Org-Chart-061516_0.pdf;
https://www.cbp.gov/sites/default/files/assets/documents/2016-Jun/cbp-ES-Org-chart-061516_0.pdf (last accessed Jul. 12, 2017).



The boxes highlighted in red are the two offices (OFO and OTD) that were contacted as part of the Government's search.  No inquiry was made to:

(a)    CBP Headquarters (light blue boxes), which includes the Commissioner, the Deputy Commissioner, their Chiefs of Staff, Deputy Chiefs of Staff, Advisors, and the Office of the Chief Counsel;

(b)    the U.S. Border Patrol (dark blue box); or

(c)    the Office of the Executive Assistant Commissioner for Operations Support (maroon boxes), which includes the Use of Force Center, the Policy Directorate, the Information & Incident Coordination Center and the Office of International Affairs.[7]

---

[7]  Because AILA's FOIA Request sought agency records provided to pre-clearance offices outside of the United States, responsive records may exist at CBP's Office of International Affairs.

Because CBP personnel used the Inspector's Field Manual (IFM) for decades as a resource on operational procedures at ports of entry nationwide, it is beyond question that CBP Headquarters and other CBP offices had discussions about the discontinuation of the IFM and the implementation of the ORT—the IFM's replacement—and conveyed that information to CBP personnel in a way that would have generated responsive "correspondence, directives, documents, . . . e-mails, . . . guidance, guidelines, . . . instructions, analyses, memoranda, . . . notes, orders, . . . [or] reports[s]." (*See* Compl., Ex. A (ECF No. 1).)  Otherwise, CBP personnel would not know about the existence of the ORT, a "centralized online repository" that, in Chapter 11 alone, contains links to over 350 admissibility policies, memos, musters and SOPs.

**D.      There Is A Genuine Disputed Issue Of Material Fact Regarding Whether Records Related To The Implementation Of The ORT Exist.**

The Government's own declarants provide contradictory statements about the nature of the ORT, which raises an issue of material fact as to whether records related to the implementation of the ORT exist.  As noted above, Mr. Hutton describes the ORT as "a centralized *online repository* for CBP's admissibility policies." (Hutton Decl. ¶ 5 (ECF No. 16-2 at 3).)  By contrast, Mr. Howard states that:  "As the ORT *has not been drafted*, CBP did not locate any documents related to the implementation of the ORT."  (Howard Decl. ¶ 7 (ECF No. 16-2 at 8).)

The two declarants appear to have a different understanding about what the ORT is.  Specifically, by stating that the ORT has not been "drafted," Mr. Howard seems to believe that the ORT—when drafted—would have a discrete form, such as a single document or manual.  By contrast, Mr. Hutton characterizes the ORT as an "online repository," akin to a library of electronic versions of policies and procedures.  It makes no sense to discuss the "drafting" of an "online repository."

16

Moreover, neither declarant discusses why, as discussed in Section I.B. above, there are links to "ORT," "<<ORT Home" and various Chapters other than Chapters 11 and 12 on the CBP website.  Nor do they address how any of the thousands of CBP personnel would even know about the existence of Chapters 11 and 12 if they were not provided an e-mail or other notification that those Chapters on the CBP website had been "finalized," as Mr. Howard represented to AILA in his March 1, 2017 email:

> Attached is CBP FOIA's response to your request for the Officer's Reference Tool, which has replaced the Inspector's Field Manual.  Please be advised that the only two chapters that have been finalized at this time are Chapters 11 and 12, which are attached here.  You are receiving a marked copy of Chapter 12 as there are no redactions, only a single line through.  Chapter 11 has been attached with our redactions.

(Lawrence Decl., Ex. A; *see also* Tsao Decl., Ex. D at 28-29 n.33 (According to the USCIRF report , ORT "*Chapter 11 was made available on the OFO intranet in July 2015*.").  Thus, contrary to Mr. Howard's declaration statement that the "ORT has not been drafted," there must be records related to the implementation of ORT Chapter 11, which CBP did not identify or produce.  *See Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (An agency's search must be "more than perfunctory" and must "follow through on obvious leads to discover requested documents.") (internal citation omitted).

**E.    There Is A Genuine Disputed Issue Of Material Fact Regarding Whether CBP Properly Asserted FOIA Exemption (7)(E) In Redacting The Titles Of Certain Agency Records In ORT Chapter 11.**

**1.    Factual Background**

On March 1, 2017, CBP produced to AILA a version of the ORT Chapter 11 index, with 66 of the policy documents redacted pursuant to Exemption 7(E).  (*See* Lawrence Decl. ¶ 2 & Ex. B.)

On March 13, 2017, AILA's counsel wrote CBP's counsel, noting that:

4.    The redactions cover material that is already in public records:

(a)  The two documents listed as memoranda dated 2/20/2017 are Secretary Kelly's memoranda implementing the executive orders on border security and interior enforcement ("Implementing the President's Border Security and Immigration Enforcement Improvement Policies" and "Enforcement of the Immigration Laws to Serve the National Interest");

(b) The memoranda dated 2/21/2017 appear to be the fact sheets produced by DHS regarding the executive orders and published on 2/21/2017; and

(c) Other material also is readily identifiable.  For example, the redacted memorandum from December 22, 2004 is described by USCIS as being training materials relating to the Safe Third Country Agreement between the United States and Canada: "On December 22, 2004, CBP issued guidance to field offices, including the material discussed during the training session."

(Tsao Decl., Ex. A.)

On March 17, 2017, CBP's counsel responded:

4.   CBP Agency Counsel is talking to her client now about the redactions.  I assume they were redacted because although public there is still some Exemption 7 privilege involved.  When I hear back from them I will let you know.

(*Id.* at Ex. B.)

On June 7, 2017, the Government filed its motion for summary judgment and supporting declarations.  Mr. Hutton's declaration states that the titles of certain memoranda, musters and records in Chapter 11 (which number 66) were redacted because those titles "would reveal CBP's internal techniques, methods, procedures, and other sensitivities, to include the names of internal systems, law enforcement tools, and applications that are employed during the course of certain law enforcement actions."  (Hutton Decl. ¶ 9 (ECF No. 16-2 at 3-4).)  CBP also redacted "policy names that would provide insight into particularized law enforcement and immigration processes, which taken in the aggregate would provide insight into overall methods utilized by CBP" and "titles that provide insight about particular types of programs that are not publicly

known . . . [that] focus on particular categories of vulnerable populations or targeted populations that pose a national security or law enforcement risk, and would reveal where CBP focuses its resources and targets its law enforcement actions."  (*Id.* at ¶¶ 11-12 (ECF No. 16-2 at 4).)

On June 15, 2017, CBP produced a second version of the ORT Chapter 11 index, which removed redactions of the titles of 35 of the original 66 records (*i.e.*, 53%) that had been redacted.  (*See* Tsao Decl. ¶ 6 & Ex. E (newly unredacted titles shown in red).)

### 2.    Legal Standard

Exemption 7(E) allows withholding of "records or information compiled for law enforcement purposes" if that disclosure would reveal "techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); *see Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (Exemption 7(E) requires the agency to "demonstrate[] logically how [the release] of the requested information might create a risk of circumvention of the law"); *Allard K. Lowenstein Int'l Human Rights Project v. U.S. Dep't of Homeland Sec.*, 626 F.3d 678, 682 (2d Cir. 2010) ("[T]echniques and procedures," refers to "how law enforcement officials go about investigating a crime.").

### 3.    The Government is not entitled to summary judgment as to CBP's assertion of Exemption 7(E) to redact titles of Chapter 11 records.

The titles of the 35 newly-unredacted Chapter 11 records call into doubt the validity of CBP's stated rationale for redacting titles of records in the first place, as stated in the Hutton declaration.  Examples of these titles include:

> "Basic Elements of a Thorough Primary Inspection" (Bates No. USCBPRevised000003);

"Continued Vigilance When Conducting Primary Inspections" (*id.* 000005);

"Enforcement of the Immigration Laws to Serve The Public Interest" (*id.* at 000007);

"Exercise of Prosecutorial Discretion" (*id.*);

"Fraud and Misrepresentation Threshold Guidance" (*id.* at 000009);

"Global Entry Program Eligibility" (*id.*);

"Implementation of Standard Operating Procedures (SOP) for Processing Lost or Stolen Passport Information" (*id.* at 000011);

"Processing Expedited Removal Cases" (*id.* at 000016);

"Proper Passport Notations When Admission Denied" (*id.* at 000017);

"Supervisory Checklists Air, Sea, Land" (*id.* at 000021);

"The Enforcement Mindset" (*id.*);

"Trusted Traveler Program Denials and Revocations" (*id.*);

"Unlawful Presence and Unlawful Status" (*id.* at 000023); and

"Withdrawal of Application Procedures at Ports of Entry" (*id.* at 000025).

(Tsao Decl., Ex. E.)

These now-unredacted titles show that, other than describe the general subject of the memoranda, muster or policy, the *titles themselves—e.g.*, "*The Enforcement Mindset*"—do not disclose law enforcement "techniques or procedures," or any information that "could reasonably be expected to risk circumvention of the law" under Exemption 7(E).  *See Allard K. Lowenstein*, 626 F.3d at 682 ("defining technique as a technical method of accomplishing a desired aim; and procedure as a particular way of doing or of going about the accomplishment of something") (citation omitted).

20

Moreover, the *only* reason that CBP even revisited its redactions of ORT Chapter 11 is because AILA's counsel wrote CBP's counsel on March 13, 2017 and informed CBP that a number of its redactions were erroneously applied to publicly available documents. (*See* Tsao Decl., Exs. A-B.) If AILA had not done so, then CBP would still be maintaining that the 35 now-unredacted titles were properly redacted under Exemption 7(E), as stated in the Hutton declaration.

Given that CBP has now admitted that over half (35 out of 66) of CBP's original redactions of Chapter 11 titles were unfounded, CBP is not entitled to summary judgment as to the propriety of its Exemption 7(E) redaction of the remaining 31 Chapter 11 titles. As discussed below, AILA should be permitted to depose Mr. Hutton about the asserted rationale for redacting certain Chapter 11 document titles. Alternatively, CBP should be ordered to:

(a)     produce unredacted versions of those 31 titles to this Court for *in camera* review, so this Court can assess whether Mr. Hutton's stated reasons for the redactions apply; or

(b)     produce a *Vaughn* index with respect to those redactions, so AILA has a factual basis to challenge CBP's continued assertion of Exemption 7(E) as to the titles of documents.

## II.     AILA'S MOTION FOR LIMITED DISCOVERY SHOULD BE GRANTED.

### A.     Legal Standard

Under Rule 56(d), when facts are unavailable to the non-movant, the court may deny a motion for summary judgment, allow the non-movant "to take discovery" or "issue any other appropriate order." Fed. R. Civ. P. 56(d)(1)-(3).

Although "[d]iscovery is generally disfavored in FOIA cases," *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 176 (D.D.C. 2011), "a court should not . . . cut off discovery before a proper record has been developed; for example, where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is

patently incomplete, or where the agency's response is for some other reason unsatisfactory." *Exxon Corp. v. FTC*, 466 F. Supp. 1088, 1094 (D.D.C. 1978).  Plaintiff may obtain discovery in a FOIA case if it can show "bad faith on the part of the agency sufficient to impugn the agency's affidavits . . . or provide some tangible evidence that . . . summary judgment [on behalf of defendants] is otherwise inappropriate."  *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994), citing *Goland v. CIA*, 607 F.2d 339, 355 (D.C. Cir. 1978) and *Washington Post Co. v. U.S. Dep't of State*, 840 F.2d 26, 28 (D.C. Cir. 1988), *vacated on other grounds*, 898 F.2d 793 (1990); *see also Justice v. IRS*, 798 F. Supp. 2d 43, 47 (D.D.C. 2011), *aff'd*, 485 Fed. Appx. 439 (D.C. Cir. 2012).  As in other contexts, the district court "has broad discretion to manage the scope of discovery in FOIA cases."  *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312 (D.C. Cir. 2006).

**B.     AILA Should Be Permitted To Depose The Government's Two Declarants With Respect To The Numerous Fact Issues That Their Declarations Raise.**

Pursuant to Fed. R. Civ. P. 56(d), AILA should be permitted to depose the Government's declarants on the following fact issues:

- why CBP took almost four years to process AILA's FOIA Request; why no search for electronic documents was conducted; and why no CBP offices other than OFO and OTD were contacted, which are all evidence of bad faith;

- the basis for Mr. Hutton's declaration statement that ORT Chapter 11 does not "contain" the over 350 CBP policies and procedures listed in that Chapter (even though electronic links to PDF versions of those documents are provided); Mr. Hutton's definition of "contain"; and how, in the Government's view, "provid[ing] a link to access" a PDF copy of a record listed in Chapter 11 differs from providing a link to a PDF copy of record "contained" in Chapter 11;

- the basis for Mr. Hutton's and Mr. Howard's declaration statements that "there are only two parts of the ORT that exist – Chapter 11 and Chapter 12"; why there are links to "ORT,"

"<<ORT Home" and other Chapters on the CBP website; and what is displayed when those links are clicked;

- Mr. Hutton's and Howard's understanding of the nature of the ORT; the basis for Mr. Howard's declaration statements that "the ORT has not been drafted" and that "CBP did not locate any documents related to the implementation of the ORT"; and Mr. Howard's definition of "implementation" and "finalized";

- Mr. Hutton's understanding of when a Chapter of the ORT is "final" or "exist[s]"; how an online repository of records such as Chapter 11 can ever be "final," given that the policies listed in Chapter 11 are dated from 2004 to the present, and new records are periodically added to the repository and obsolete records are periodically removed from the repository; the definition of an "ORT chapter"; and when ORT Chapter 11 or any other ORT chapter was made available to CBP employees; and

- whether CBP applied the asserted reasons stated in the Hutton declaration in redacting the titles of numerous Chapter 11 policies and procedures under FOIA Exemption (7)(E); and why the 35 now-unredacted Chapter 11 titles were redacted in the first place.

*See Exxon Corp.*, 466 F. Supp. at 1094 (In a FOIA case, "a court should not . . . cut off discovery . . . where the agency's response raises serious doubts as to the completeness of the agency's search, where the agency's response is patently incomplete, or where the agency's response is for some other reason unsatisfactory."); *Families for Freedom v. CBP*, No. 10-2705, 2011 WL 6780905 (S.D.N.Y. Dec. 27, 2011) (in FOIA case, granting limited discovery against CBP, and finding that showing of agency bad faith is not necessary where agency has failed to satisfy its burden regarding the adequacy of its search).

**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment should be denied, and AILA's motion for limited discovery should be granted.

Dated:  July 13, 2017                                  Respectfully submitted,


                                                       /s/ *Naikang Tsao*
                                                       Naikang Tsao (admitted *pro hac vice*)
                                                       ntsao@foley.com
                                                       FOLEY & LARDNER LLP
                                                       150 East Gilman Street
                                                       Madison, WI  53703
                                                       Telephone:  (608) 258-4250
                                                       Fax:  (608) 258-4258

                                                       Melissa Crow (#453487)
                                                       mcrow@immcouncil.org
                                                       AMERICAN IMMIGRATION COUNCIL
                                                       1331 G. Street, NW, Suite 200
                                                       Washington, DC  20005
                                                       Telephone:  (202) 507-7523
                                                       Fax:  (202) 742-5619

                                                       *Attorneys for Plaintiff American Immigration*
                                                       *Lawyers Association*

## CERTIFICATE OF SERVICE

I certify that I caused a copy of the following documents to be served upon Defendants' counsel via ECF:

Plaintiff American Immigration Lawyers Association's Combined Opposition To Defendants' Motion For Summary Judgment And Memorandum Of Law In Support Of Motion For Limited Discovery

Plaintiff American Immigration Lawyers Association's Responses To Defendants' Statement Of Material Facts

Plaintiff American Immigration Lawyers Association's Statement Of Genuine Issues Of Material Fact

[Proposed] Order

Declaration of Naikang Tsao

Declaration of Betsy Lawrence

*/s/ Naikang Tsao*
Naikang Tsao