**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **AMERICAN IMMIGRATION LAWYERS ASSOCIATION**, <br><br> Plaintiff, <br><br> v. <br><br> **U.S. DEPARTMENT OF HOMELAND SECURITY,** *et al.*, <br><br> Defendants. | Case No. 1:16-cv-02470 (TNM) |

**MEMORANDUM OPINION**

Seven years ago, the American Immigration Lawyers Association ("AILA") submitted a Freedom of Information Act request to the U.S. Customs and Border Protection ("CBP") for information on the inspection and admission process for entry into the United States. CBP has produced nearly 400 responsive documents. After earlier efforts by the Court and the parties to narrow the dispute, the sole remaining issue is whether CBP properly withheld information in a few dozen documents under FOIA's law enforcement exemption, 5 U.S.C. § 552(b)(7)(E). Before the Court are the parties' cross-motions for summary judgment. For the following reasons, both motions will be granted in part and denied in part.

**I.**

Several years ago, the Inspector Field Manual ("IFM") was the "primary reference tool" that CBP officers used for the inspection and admission process for entry into this country. *See* Pl.'s Resps. to Defs.' Statement of Material Facts ¶ 1, ECF No. 55-1. The IFM covered "inadmissibility issues, standards for admission, and acceptable evidence," as well as details on the inspection process. *Id.* ¶ 2 (cleaned up). But in 2013, CBP discontinued the IFM and sought

to develop a new manual, the Officers Reference Tool ("ORT"). Decl. of James Ryan Hutton ¶¶ 4–5, ECF No. 16-2. Like the IFM, the ORT will serve as a "comprehensive 'how to' manual detailing official CBP policies and procedures for CBP's admissibility mission." *Id.* ¶ 5. Currently, the ORT only consists of two indexes designated as Chapters 11 and 12. *Id.* ¶ 6. There are no other chapters in the ORT. The Chapter 11 index includes hyperlinks to "various policies, memoranda, guides, manuals, and musters," while the Chapter 12 index includes hyperlinks to "laws, regulations, and government systems that govern the admissibility of passengers at [U.S.] ports of entry." *Id*. ¶¶ 7–8. Chapter 12 also contains hyperlinks to internal resources such as CBP's Policy Online Document Search ("PODS"). Third Decl. by Patrick Howard ¶ 28, ECF No. 43-2.

In 2013, AILA submitted a FOIA request seeking records about the instructions provided to the field/ports-of-entry on the discontinuation of the IFM and implementation of the ORT. *See* Compl. for Decl. & Inj. Relief ("Compl.") Ex. A at 2–3, ECF No. 1-1.[1] AILA also requested a "complete copy of the portions of the ORT that have been finalized and implemented for use in the field/ports-of-entry." *Id.* at 3. AILA did not receive a response so it filed this action against CBP and its parent agency, the U.S. Department of Homeland Security (collectively, the "Government"). *See* Compl.

CBP first produced a 25-page online index of ORT Chapter 11, a one-page index of ORT Chapter 12, and two records related to the discontinuation of the IFM. *See* Decl. of Betsy Lawrence ¶¶ 2–3, ECF No. 19; *id.* Exs. B, C, and D. But it did not search or produce any of the documents listed in Chapters 11 or 12. When the Government first moved for summary judgment, this Court agreed with AILA that CBP must review the listed documents and produce

---

[1] All page citations refer to the page numbers that the CM/ECF system generates.

any that were responsive and non-exempt. *See* Mem. Order at 4–5, ECF No. 30. CBP then produced 363 of the documents from ORT Chapter 11 and "focused its attention on the PODS database" for Chapter 12.[2] *See* Pl.'s Resps. to Defs.' Statement of Material Facts ¶¶ 10, 12. AILA moved for summary judgment, arguing that CBP still had not conducted an adequate search for responsive records and had failed to explain why certain documents were withheld or redacted. *See* Pl.'s Mot. for Summ. J., ECF No. 36-1. The Court held a hearing on this motion. *See* Min. Entry (Mar. 15, 2019). The Court denied AILA's motion without prejudice but ordered the Government to file a supplemental declaration detailing its search methods, produce a *Vaughn* index for the redactions and withholdings, and produce or justify withholding five documents referred to other federal agencies. *See* Order, ECF No. 45. In total, the Government produced almost 400 documents. *See* Pl.'s Resps. to Defs.' Statement of Material Facts ¶ 14.

CBP initially withheld information under four FOIA statutory exemptions: 5 U.S.C. § 552(b)(5), (b)(6), (b)(7)(C), and (b)(7)(E). To support these withholdings, it submitted a *Vaughn* index and a Fourth Declaration by Patrick Howard ("Fourth Howard Declaration"). *See* Defs.' Mot. for Summ. J. Ex. A at 2–10, 15–322, ECF No. 53-3. For each document, the *Vaughn* index provides a document description, the applicable FOIA exemption(s), and a description of the material withheld and why the exemption applies. *See id*. at 15–322.

The Fourth Howard Declaration does not address each document. *See id*. at 2–10. For example, it identifies five categories of information withheld under 5 U.S.C. § 552(b)(7)(E): (1) "Codes and Functionalities of CBP Systems," (2) "Training Materials for Users of CBP Systems," (3) "Email Addresses of Group Listserves," (4) "Law Enforcement Methods for

---

[2] "Due to the massive nature of records hyperlinked to Chapter 12, the parties conferred and Plaintiff focused its attention on the PODS database." *See* Pl.'s Resps. to Defs.' Statement of Material Facts ¶ 12.

Processing Passengers at Ports of Entry," and (5) "Information Related to Targeting." *Id.* at 7–9. It states that "CBP is constrained in describing the techniques, procedures, and guidelines by its Exemption (b)(7)(E) withholdings, so as to avoid revealing information CBP seeks to protect, which is not generally known the public." *Id.* ¶ 19. Thus, it "aims to fairly represent the Exemption (b)(7)(E) withholdings but does not purport to be an all-inclusive rendering of all withheld information." *Id.* For each category, the Fourth Howard Declaration explains the type of information withheld and why that information qualifies for protection under 5 U.S.C. § 552(b)(7)(E).

Before these cross-motions, the parties worked together to narrow their dispute. For example, AILA agreed not to challenge the adequacy of CBP's search, and CBP re-reviewed and produced less redacted versions of many documents. Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Cross-Mot.") at 7, ECF No. 56-1. The parties' collaboration left 71 disputed records remaining at the start of briefing. *Id.* But their collaborative efforts continued. Along with its opposition brief, the Government provided a supplemental *Vaughn* index. *See* Defs.' Opp'n to Pl.'s Cross-Mot. for Summ. J. Ex. A ("Supp. *Vaughn* Index"), ECF No. 59-1. It also produced less redacted versions of 27 of the 71 disputed records. Pl.'s Reply in Supp. of Cross-Mot. for Summ. J. ("Pl.'s Reply") at 5, ECF No. 64. AILA then elected not to challenge 21 of these newly redacted documents and another 14 documents. *Id.* It also dropped its challenge to redactions made under 5 U.S.C. § 552(b)(6) and (b)(7)(C).[3] *Id.* at 5 n.4.

---

[3] 5 U.S.C. § 552 (b)(5) also is no longer applicable because none of the remaining redactions invoke this exemption.

The Court also ordered the Government to produce updated versions of five documents. *See* Order, ECF No. 65. The Government complied and AILA did not raise any issues with this production. *See* Notice of Filing of Release of Rs., ECF No. 66.

After four years of litigation, only a single dispute remains: whether the Government properly withheld information in 36 documents under 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)").[4]

**II.**

To win on summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). FOIA requires federal agencies to "disclose information to the public upon reasonable request unless the records at issue fall within specifically delineated exemptions." *Judicial Watch, Inc. v. FBI*, 522 F.3d 364, 366 (D.C. Cir. 2008). Thus, in a FOIA case, an agency is entitled to summary judgment if it shows that there is no genuine dispute about whether "each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from [FOIA's] inspection requirements." *See Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 2011) (cleaned up).

The agency "bears the burden of proving the applicability of claimed exemptions," and its justification is sufficient "if it appears logical or plausible." *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011) (cleaned up). It may submit declarations, a *Vaughn* index, or a combination of both to justify its withholdings under FOIA. *See Judicial Watch, Inc. v. FDA*,

---

[4] The Court will refer to these documents in the order in which they appear in the supplemental *Vaughn* index. The disputed documents appear as Records 5-8, 11-14, 17, 20, 23-25, 27, 29-35, 38, 40, 43-47, 49, 51, 53, 60-61, and 65-67. *See* Pl.'s Reply at 5.

5

449 F.3d 141, 146 (D.C. Cir. 2006).  And courts afford this evidence a "presumption of good faith."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

AILA challenges only CBP's withholdings under Exemption 7(E).  *See* Pl.'s Reply at 5.  This exemption protects information "compiled for law enforcement purposes" that would either "disclose techniques and procedures for law enforcement investigations or prosecutions," or "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E).

"Exemption 7(E) sets a relatively low bar for the agency to justify withholding."  *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).  The agency must only show "logically how the release of the requested information might create a risk of circumvention of law."  *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1194 (D.C. Cir. 2009) (cleaned up).  The redacted information need not be "'how to' manuals for law-breakers" because "the exemption is broader than that."  *Id.* at 1193.  Although Exemption 7(E) "clearly protects information that would *train* potential violators to evade the law or *instruct* them how to break the law," it also exempts "information that could *increase the risks* that a law will be violated or that past violators will escape legal consequences."  *Id.* (emphasis in original).

### III.

The parties' cross-motions for summary judgment raise three issues.  First, whether CBP's declarations and indexes on their face justify the withholdings under Exemption 7(E).  Next, whether the redacted documents themselves show that the withheld information is protected under Exemption 7(E).  And finally, whether CBP's segregability determination was proper.  In short, the Court finds for CBP on all three issues save for two minor exceptions.

6

**A.**

The Court first must consider whether CBP has submitted evidence supporting its withholdings under Exemption 7(E). The question is whether there is a "reasonable basis to evaluate the claim of privilege." *See Judicial Watch*, 449 F.3d at 146 (cleaned up). And the "touchstone" of the analysis is the function of the agency's evidence, not the form. *See id.* It must provide a "relatively detailed justification, specifically identifying why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 251 (D.C. Cir. 1977).

CBP submitted the Fourth Howard Declaration and two *Vaughn* indexes to support its Exemption 7(E) withholdings. AILA attacks each separately, but for similar reasons. It states that the Fourth Howard Declaration fails to "describe a single record at issue in this case" or "explain how or why its boilerplate language applies to any particular application of Exemption 7(E)." Pl.'s Reply at 7. AILA similarly challenges the *Vaughn* indexes as providing "only minimal, vague language" that fails to identify "the reasons why a particular exemption is relevant and correlat[e] those claims with the particular part of the withheld document to which they apply." *Id.* at 8–9.

But the evidence must be viewed together, not in a vacuum. CBP chose a "legitimate way" to describe the basis for its withholdings under Exemption 7(E). *See Judicial Watch*, 449 F.3d at 148. It elected to "tie each document to one or more claimed FOIA exemptions" in the *Vaughn* indexes and "summarize the commonalities of the documents" in the Fourth Howard Declaration. *Id.* Combined, they provide a reasonable basis to assess the withholdings under Exemption 7(E).

**1.**

First, AILA identifies Exemption 7(E) justifications it claims are "vaguely described" because they lack "specifics about how and why the withheld information could risk circumvention of the law." Pl.'s Reply at 8–9 (discussing Records 17, 20, 32, 35, 40, and 60). But CBP must walk a fine line. It must describe why Exemption 7(E) applies without disclosing the very techniques, procedures, and guidelines it seeks to protect. *See* Fourth Howard Decl. ¶ 19 ("CBP is constrained in describing the techniques, procedures, and guidelines by its Exemption (b)(7)(E) withholdings, so as to avoid revealing information CBP seeks to protect, which is not generally known to the public."). That is why Exemption 7(E) sets a "relatively low bar." *Blackwell*, 646 F.3d at 42.

CBP clears this bar. Its evidence establishes that the withheld information in these documents would "*train* potential violators to evade the law or *instruct* them how to break the law," or "*increase the risks* that a law will be violated or that past violators will escape legal consequences." *Mayer Brown*, 562 F.3d at 1193 (emphasis in original). Indeed, the protected information in these documents appears to be central to CBP's law enforcement mission. CBP withheld the techniques and procedures it employs to determine eligibility to enter or remain in the United States and assess and monitor risks at the borders.

Record 17 contains details for interviewing applicants for expedited removal, *see* Supp. *Vaughn* Index at 14, Record 20 involves "law enforcement techniques and procedures related to determining admissibility at ports of entry," *see id.* at 17, Record 40 addresses "law enforcement tactics and procedures geared towards identifying and detecting violators of student visas," *see id.* at 39, and Record 60 provides the techniques and procedures "utilized during inspections at ports of entry to determine when a further scrutiny is required," *see id.* at 60. CBP also did not

disclose "sensitive" techniques and procedures for processing records in its law enforcement systems in Records 32 and 35, including how to process "individuals formerly subject to national security reporting and registration requirements." *See id*. at 31, 34.  This includes the "information CBP officer must consider and prioritize, and how to document such encounters in CBP systems." *Id.* at 34.

CBP asserts that revealing any of this information would "advise potential violators of CBP's law enforcement techniques and procedures, thereby enabling them to circumvent the law, avoid detection, and evade apprehension." *Id.* at 39, 60; *see id*. at 14, 17, 31, 34–35.  And that disclosure would "thwart CBP's current law enforcement efforts and risk individuals circumventing CBP's future efforts." *Id.* at 31, 35, 39, 60.  This is so because would-be violators could "alter behavior, change associations, or develop countermeasures to thwart the effectiveness" of these procedures and techniques.  Fourth Howard Decl. at 9.

Application of Exemption 7(E) for these documents is "self-evident." *See Morley v. CIA*, 508 F.3d 1108, 1129 (D.C. Cir. 2007).  CBP cannot reveal the details of these techniques and procedures because doing so would allow those seeking to circumvent the federal immigration laws to extrapolate what to avoid and how to prepare, increasing the risk that they enter or remain in the United States illegally.  *See Pub. Emps. for Envtl. Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 205 (D.C. Cir. 2014) (finding agency properly withheld emergency action plans under Exemption 7(E) because "[t]errorists or criminals could use the information in the emergency action plans to thwart rescue operations . . . or to obstruct attempts to investigate the source of such a failure").  To grant AILA's request for more information would be untenable.  It would require disclosure of the very details that create the risk that a law will be circumvented in the first place.  *See* Fourth Howard Decl. ¶ 19.  That is not

9

what FOIA contemplates.  *Accord Barnard v. Dep't of Homeland Sec.*, 598 F. Supp. 2d 1, 22–23 (D.D.C. 2009).

That these justifications borrow from the statutory language of Exemption 7(E) does not make them deficient.  CBP may use "the language of the statute as part of its explanation for withholding documents" because it "links the statutory language to the withheld documents." *Judicial Watch*, 449 F.3d at 147.

**2.**

Second, AILA claims that CBP failed to correlate the basis for Exemption 7(E) to each redaction in a document.  *See* Pl.'s Reply at 9.  It points to Record 5 and similarly lengthy documents for which the *Vaughn* indexes include only a single justification for the redactions. *Id.*  In other words, AILA argues that because these documents are longer, there must be more than one reason for the redactions that CBP has not articulated.  Not so.  It is plausible, if not expected, that the same type of information in the same document is redacted for the same reason.  CBP need not repeat the same justification each time.  *See Judicial Watch*, 449 F.3d at 147 ("We have never required repetitive, detailed explanations for each piece of withheld information[.]").

Record 5 is a 19-page document titled "I-94 Automation Guidelines for Processing Travelers at Primary and Secondary."  *See* Second Decl. of Kristin Macleod-Ball ("Second Macleod-Ball Decl.") Ex. A, ECF No. 56-5.  In this document, CBP redacted "training materials for its internal systems used by CBP officers and agents," including "names of databases, internal system codes and information related to CBP system interfaces."  Supp. *Vaughn* Index at 3.  It explained that Exemption 7(E) applies because disclosure of this information "could be used to locate, access, and navigate internal law enforcement computer systems and/or databases

and risk compromising the integrity of CBP systems." *Id.* The Fourth Howard Declaration further explains that disclosing these training materials would reveal the "location of information CBP gathers, analyzes and utilizes within such databases making them vulnerable to cyber-attacks," and would "allow wrongdoers to gain unauthorized access to CBP systems and databases and manipulate information available to CBP officers." *See* Fourth Howard Decl. at 8.

These explanations are neither vague nor boilerplate. CBP need not expose its systems to potential threats or unwanted access. *See Blackwell*, 646 F.3d at 42. And it is unnecessary to justify each redaction for "names of databases," "internal system codes," or "information related to CBP system interfaces" because access to any of this information poses the same risk. It makes CBP's systems "vulnerable and weaken[s] their effectiveness" as a tool for CBP to enforce federal immigration laws. *See Morley*, 508 F.3d at 1129. Thus, the single explanation for these redactions suffices. *See Judicial Watch*, 449 F.3d at 147.

In sum, the Fourth Howard Declaration—which justifies withholding each category of information—and the two *Vaughn* indexes—which justify withholding information in each document—collectively establish a reasonable basis to assess the Exemption 7(E) withholdings.

**B.**

The next issue is whether the content of the documents and withheld information qualifies for protection under Exemption 7(E). To do so, it must meet two criteria. The information must be "compiled for law enforcement purposes" and it must either "disclose techniques and procedures for law enforcement investigations or prosecutions," or "disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Both requirements are met here.

**1.**

A document is "compiled for law enforcement purposes" if the "investigatory activity that gave rise to the document is related to the enforcement of federal laws, and there is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Tax Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002) (cleaned up). The materials need not be compiled for a specific investigation. *Id.* at 79. And courts are "more deferential to the agency's claimed purpose for the particular records" where "the agency's principal function is law enforcement." *Pub. Emps. for Envtl. Resp.*, 740 F.3d at 203 (cleaned up). That deference applies here because "CBP is indisputably a law enforcement agency." *Gilman v. Dep't of Homeland Sec.*, 32 F. Supp. 3d 1, 19 (D.D.C. 2014).

It is unclear whether AILA still claims some records were not "compiled for law enforcement purposes." AILA originally challenged some records on this basis. *See* Pl.'s Cross-Mot. at 16–17. But it did not re-raise these arguments in its reply after receiving the supplemental *Vaughn* index and documents with revised redactions.[5] To avoid any doubt, the Court finds the remaining documents satisfy this requirement.

CPB's principal mission is to protect the borders, enforce federal immigration law, and facilitate international trade and travel. *Accord Barnard*, 598 F. Supp. 2d at 15. The five categories of withheld information share a rational nexus to this mission. *See* Fourth Howard Decl. at 7–9. CBP's computer systems and means of communication enable it to convey law enforcement information, "gather, analyze and utilize" this information, and run "database

---

[5] For example, AILA argued that a document titled "Forwarding Form I-275 to the U.S. Department of State" was not compiled for law enforcement purposes. *See* Pl.'s Cross-Mot. at 16–17. But this challenge is moot because CBP later removed all Exemption 7(E) redactions from this document. *See* Supp. *Vaughn* Index at 17.

12

queries" to carry out its enforcement mandate. *See id*. at 8. And how CBP officers examine applicants for entry into the United States and assess, monitor, and prevent risks at the borders rationally relates to ensuring only those lawfully permitted to enter the country do so. *See id*. at 8–9.

Each of the documents also shares a nexus to CBP's enforcement mandate. They provide instructions on how to (1) interpret and apply the federal immigration laws, *see, e.g.*, Second Macleod-Ball Decl. Ex. J, ECF No. 56-14; *id.* Ex. Y, ECF No. 56-29; (2) assess and process travelers for entry into and removal out of the country, *see, e.g.*, *id.* Ex. V, ECF No. 56-26; *id.* Ex. SS, ECF No. 56-49; and (3) charge applicants for violating federal immigration laws, *see, e.g.*, *id.* Ex. B, ECF No. 56-6; *id.* Ex. BB, ECF No. 56-32. The Court is thus satisfied that the disputed records were compiled for law enforcement purposes.

### 2.

AILA's challenge focuses on the second requirement of Exemption 7(E). The withheld information must risk disclosing either "techniques and procedures for law enforcement investigations or prosecutions," or "guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). It raises two arguments for why the withholdings fall short. Neither is persuasive.

*First*, AILA claims some withholdings are overbroad because the "relevant procedure is based on a publicly available document or policy or necessarily is made known through use," or they "describe the legal basis for taking an enforcement action rather than a technique, procedure, or guideline." *See* Pl.'s Reply at 14–15 (cleaned up). AILA points to the redactions in Records 14 and 23 to bolster this argument.

Record 14 is a CBP memorandum related to "Unlawful Presence and Unlawful Status." *See* Second Macleod-Ball Decl. Ex. J, ECF No. 56-14.  AILA claims that the text "suggests that some redactions provide a legal assessment of when unlawful presence does and does not accrue."  Pl.'s Reply at 10.  It appears to base this claim on an unredacted section of the document that quotes the statutory language of Section 212(a)(9)(B)(ii) of the Immigration and Nationality Act ("INA").  Second Macleod-Ball Decl. Ex. J at 1, ECF No. 56-14.

Record 23 is a CBP memorandum addressing "Inadmissible Aliens with Medical Conditions and Family Units."  *See* Pl.'s Mot. for Summ. J. Ex. G, ECF No. 36-9.  The document is labeled "Law Enforcement Sensitive."  *Id.*  But it refers to a publicly available November 2014 memorandum titled "Policies for the Apprehension, Detention and Removal of Undocumented Immigrants."  *See id*.  Pointing to this reference, AILA argues that the redactions in Record 23 must cover public information not protected under Exemption 7(E).  Pl.'s Reply at 13.

But the presence of unredacted, publicly available information in Records 14 and 23 does not overcome CBP's decision to withhold information in these documents under Exemption 7(E).  That is because *how* CBP employs public information may not be known and can itself disclose law enforcement techniques and procedures.  *See Shapiro v. U.S. Dep't of Justice*, 893 F.3d 796, 800 (D.C. Cir. 2018) ("[E]ven if a database is available and its search terms are available to the public, the methods that the FBI uses to search the database and what results it considers meaningful . . . can reveal law enforcement techniques and procedures").  Indeed, discussion of public information still may reveal "what information CBP considers when analyzing its vulnerabilities at the border, and this analysis, itself, is not publicly known and may risk circumvention of the law."  *Gilman*, 32 F. Supp. 3d at 21.  CBP need not disclose all details

14

"because some aspects of them are known to the public." [6] *Barnard*, 598 F. Supp. 2d at 23.

The withholdings in Records 14 and 23 could just as likely reflect internal CBP analyses or instructions based on Section 212(a)(9)(B)(ii) of the INA or the November 2014 memorandum that have not been disclosed to the public. Indeed, CBP has represented that the redactions in Record 14 protect "examples" to identify those who are unlawfully within the United States, and Record 23 covers "what circumstances CBP must contact ICE and criteria CBP must consider." Supp. *Vaughn* Index at 11, 20. Without more, reference to a public document or statute will not overcome the deference CBP must receive for its Exemption 7(E) withholdings.

*Second*, AILA argues that some withholdings "would not provide enough detail to enable circumvention of the law if disclosed." Pl.'s Reply at 14–15. But this argument is speculative. As already explained, CBP sufficiently justified why the withheld information in each record risks circumvention of the law. Courts defer to the Exemption 7(E) designations of law enforcement agencies such as CBP for a reason. *See Pub. Emps. for Envtl. Resp.*, 740 F.3d at 203. They are in the best position to know what information "could *increase the risks* that a law will be violated or that past violators will escape legal consequences." *Mayer Brown*, 562 F.3d at 1193 (emphasis in original). AILA has produced no affirmative evidence to contradict these withholdings. The Court thus will not second-guess CBP's Exemption 7(E) determinations.

---

[6] The Court previously agreed with AILA that some of the information in Records 17, 45, and 53 should be unredacted because the information had been disclosed. Order, ECF No. 65. It ordered the Government to produce updated versions of these documents. *Id.* CBP did so without objection from AILA. *See* Notice of Filing of Release of Rs., ECF No. 66. The Court thus construes AILA's silence as confirmation that this dispute over Records 17, 45, and 53 is resolved.

There are two minor exceptions. CBP erred in redacting the subject lines in Records 32 and 35. *See* Second Macleod-Ball Decl. Ex. AA, ECF No. 56-31; *id.* Ex. DD, ECF No. 56-34. That is because it already disclosed the full subject line of these documents in its *Vaughn* index. *See* Supp. *Vaughn* Index at 31, 34. CBP must reproduce these documents without the redactions in the subject line.

The Court therefore concludes that CBP's withholdings were proper under Exemption 7(E) except for the redactions identified in Records 32 and 35.

### C.

The final issue is whether CBP satisfied FOIA's segregability requirement. Under FOIA, an agency must produce "[a]ny reasonably segregable portion of a record." 5 U.S.C. § 552(b). "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a detailed justification for its non-segregability." *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (cleaned up). And an agency is "entitled to a presumption that [it] complied with the obligation to disclose reasonably segregable material," which may be rebutted only with a "quantum of evidence." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

CBP represents that its "analysts and attorneys reviewed each release of records line-by-line to confirm that any withholdings were proper, examined whether any discretionary waiver of any exemption was warranted, and determined whether any segregable, non-exemption information could further be released." Fourth Howard Decl. ¶ 22 (cleaned up). Based on this review, CBP concluded that "all reasonably segregable portions of the relevant records have been released to AILA." *Id.* (cleaned up). The Court finds that this representation combined with the *Vaughn* indexes satisfy CBP's segregability obligation. *See Johnson*, 310 F.3d at 776

("The combination of the *Vaughn* index and the affidavits . . . are sufficient to fulfill the agency's obligation to show with 'reasonable specificity' why a document cannot be further segregated.").

## IV.

Seven years after AILA first submitted its FOIA request and after nearly four years of litigation, multiple rounds of summary judgment briefing, and additional disclosures made under Court order or through voluntary concessions, it is time to put this FOIA case to rest.  CBP has sufficiently justified its few remaining disputed withholdings, except for the minor corrections noted above.  For all these reasons, the Court grants in part and denies in part the Government's motion and AILA's cross-motion.  A separate Order will issue.

Dated:  September 2, 2020                                          TREVOR N. McFADDEN, U.S.D.J.